1

2

3

4

5

6

7

8

9

10                          UNITED STATES DISTRICT COURT

11                         EASTERN DISTRICT OF CALIFORNIA

12
                                  ----oo0oo----
13
JAMES PHAM,
14
            Plaintiff,
15                                              NO. CIV. S-05-0246 FCD/GGH
        v.
16                                        MEMORANDUM AND ORDER
UNITED STATES OF AMERICA,
17  acting through the
SOCIAL SECURITY ADMINISTRATION
18  and JO ANNE B. BARNHART,
individually and as
19  Commissioner of the
Social Security
20  Administration,

21            Defendants.
_____/
22

23                                ----oo0oo----

24

25      This matter comes before the court on defendants' motion to

26  dismiss plaintiff Joseph Pham's first amended complaint pursuant

27

28

                                      1

1  to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  In

2  the alternative, defendants move for partial summary judgment

3  pursuant to Rule 56.[2]  In addition, defendant Jo Anne B. Barnhart,

4  in her individual capacity, separately moves to dismiss

5  plaintiff's first amended complaint pursuant to Rules 12(b)(5)

6  and 12(b)(6).  For the reasons set forth below, defendants'

7  motions to dismiss are GRANTED.[3]

8                              **BACKGROUND**

9      Plaintiff worked at the Social Security Administration (the

10  "SSA") for more than 13 years.  (Pl.'s First Am. Compl., filed

11  March 31, 2005 ["FAC"], at ¶ 9).[4]  During plaintiff's employment,

12  the SSA operated an Employee Suggestion Program (the "ESP").

13  (Id. at ¶ 12).  Under the ESP, employees who volunteer a

14  suggestion that "directly contributes to the efficiency, economy

15  or other improvements to Government operations" may be eligible

16  for an award upon certain conditions if the suggestion is

17  ultimately implemented. (SSA Personnel Manual for Managers,

18  Chapter S451-3: Employee Suggestion Program ["ESP Manual"], at 4,

19  Ex. AAA to FAC).  The Central Suggestion Section of the SSA,

20  which is located in Baltimore, Maryland, is responsible for

21  _____

22      [1]   All further references to a "Rule" are to the Federal
     Rules of Civil Procedure.

23      [2]   Because the court grants defendants' motion to dismiss
24  in its entirety, and does not grant plaintiff leave to amend, the
     court does not consider defendants' alternative motion for
25  summary judgment.

26      [3]   Because oral argument will not be of material
     assistance, the court orders this matter submitted on the briefs.
27  E.D. Cal. Local Rule 78-230(h).

28      [4]   Plaintiff's first amended complaint incorporates by
     reference all exhibits attached to plaintiff's original complaint
     filed on February 7, 2005.  (FAC at Footnote 1).

                                    2

1  processing the suggestions submitted through the ESP.  (Id. at

2  10).

3       During his employment with the SSA, plaintiff alleges that

4  he submitted no fewer than 15 suggestions through the ESP.  (FAC

5  at ¶ 14).  Plaintiff contends that he was entitled to an award

6  for many of his suggestions which were allegedly adopted by the

7  SSA.  (Id. at ¶¶ 15-17).  Plaintiff further contends that the SSA

8  "failed and refused" to grant him any part of any award to which

9  he was entitled.  (Id. at ¶ 24).

10      However, contrary to plaintiff's allegations, many of

11 plaintiff's suggestions were not eligible for an award under the

12 ESP, as revealed in the exhibits to plaintiff's first amended

13 complaint.[5]  The ESP Manual provides that duplicates of earlier

14 suggestions, suggestions subject to prior management

15 consideration, and other "nonsuggestions," such as ideas relating

16 to normal safety practices, working environments, and minor

17 modifications to computer screens, are not eligible for awards

18 under the ESP.  (ESP Manual at 8-9, Ex. AAA to FAC).  For

19 example, plaintiff's suggestion regarding "Centralized Updated

20 SSI RMA" was determined ineligible for an award because it was

21 duplicative and subject to prior management consideration.

22 (Evaluation Report, dated March 21, 2003, Ex. OOO to FAC).

23 Similarly, plaintiff's suggestion regarding "Important Websites"

24 was determined ineligible because the web sites were already

25 available to SSA employees.  (Evaluation Report, dated March 8,

26 ─────────────────────

27        [5]   "When the allegations of the complaint are refuted by
   an attached document, the Court need not accept the allegations
28 as being true."  Durning v. First Boston Corp., 815 F.2d 1265,
   1266 (9th Cir. 1987) (quoting Durning v. First Boston Corp., 627
   F. Supp. 393, 395 (W.D. Wash. 1986)).

1  2001, Ex. SSS to FAC).  Plaintiff was nonetheless acknowledged
2  for his efforts to identify the web sites in an email to all
3  field offices.  (Email from Paul Lindsay, dated February 6, 2001,
4  Ex. TTT to FAC).  In addition, plaintiff's suggestion regarding
5  "Phone Appointments for Contagious Diseases" did not meet the
6  criteria of a suggestion because it dealt with normal safety
7  procedures.  (Memorandum from Central Suggestion Team, dated
8  October 17, 2001, Ex. XXX to FAC).  Many of plaintiff's other
9  suggestions were "nonsuggestions" because they dealt with
10 computer screens, working environments, and normal safety
11 procedures.  (ESP Manual at 8-9, Ex. AAA to FAC).  Such
12 suggestions by plaintiff included: the addition of a physician
13 directory as a desktop icon, the removal of televisions from
14 public areas and replacement with music, providing soft music to
15 employees, allowing guards to carry pepper spray, and installing
16 metal detectors in some field offices.  (FAC at ¶ 19).

17      In addition to the foregoing, prior to 2002, job-related
18 suggestions were ineligible for an award under the ESP.
19 (Addendum to Personnel Policy Manual, Chapter S451-3, Ex. AAA to
20 FAC).  All of plaintiff's suggestions were submitted between 1999
21 and 2001.  (FAC at ¶ 19).  Therefore, any of plaintiff's
22 suggestions that related directly to his job as a claims
23 representative at the SSA were ineligible for an award under the
24 SSA.

25      Despite the fact that many of plaintiff's suggestions were
26 ineligible for an award under the ESP, he alleges that he was
27 "singled-out, disparately treated, and discriminated against by
28 defendants because of his name and Vietnamese heritage" because

4

1   he was not granted an award.  (Id. at ¶¶ 24, 34).  On August 17,

2   2001, plaintiff filed a compliant with the Equal Employment

3   Opportunity Commission (the "EEOC") seeking redress for

4   defendants' alleged discrimination.  (Id. at ¶ 35).  The EEOC

5   denied plaintiff's discrimination claim on November 10, 2004.

6   (Id. at ¶ 37).

7        Plaintiff's first amended complaint includes claims for: (1)

8   breach of contract, (2) breach of the implied covenant of good

9   faith and fair dealing, (3) quasi-contract, (4) promissory

10  estoppel, (5) negligence, (6) racial discrimination in violation

11  of 42 U.S.C. § 1981, and (7) employment discrimination in

12  violation of Title VII, 42 U.S.C. § 2000e-16.

13                            **STANDARD**

14  **I.   Rule 12(b)(1)**

15       The Eleventh Amendment limits the subject matter

16  jurisdiction of the federal courts.  See Seminole Tribe of

17  Florida v. Florida, 517 U.S. 44, 53-54 (1996).  Lack of subject

18  matter jurisdiction may be asserted by either party or the court,

19  *sua sponte*, at any time during the course of an action.  Fed. R.

20  Civ. P. 12(b)(1).  Once challenged, the burden of establishing a

21  federal court's jurisdiction rests on the party asserting the

22  jurisdiction.  See Farmers Ins. Exch. v. Portage La Prairie Mut.

23  Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990).  There are two forms

24  of Rule 12(b)(1) attacks on subject matter jurisdiction: facial

25  and factual attacks.  See Thornhill Publ'g Co. v. General Tel. &

26  Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  In an action

27  such as this, where defendants contend that the lack of federal

28  jurisdiction appears from the "face of the complaint," the

1  allegations in the complaint are taken as true for the purposes
2  of the motion.  <u>Id.</u>

3  **II.  Rule 12(b)(6)**

4      On a motion to dismiss, the allegations of the complaint
5  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322
6  (1972).  The court is bound to give plaintiff the benefit of
7  every reasonable inference to be drawn from the "well-pleaded"
8  allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>
9  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
10 need not necessarily plead a particular fact if that fact is a
11 reasonable inference from facts properly alleged.  <u>See id.</u>

12     A complaint need not plead all elements of a prima facie
13 case in order to survive a motion to dismiss.  <u>Swierkewicz v.</u>
14 <u>Sorema N.A.</u>, 534 U.S. 506, 510-512 (2002) (rejecting a heightened
15 pleading standard for employment discrimination and civil rights
16 cases).  Fair notice of the grounds for relief along with a short
17 and plain statement of the claim are all that is required.  <u>Id.</u>
18 at 508 (citing Fed. R. Civ. Proc. 8(a)(2)).

19     Given that the complaint is construed favorably to the
20 pleader, the court may not dismiss the complaint for failure to
21 state a claim unless it appears beyond a doubt that the plaintiff
22 can prove no set of facts in support of the claim which would
23 entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45
24 (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.
25 1986).  Nevertheless, it is inappropriate to assume that
26 plaintiff "can prove facts which it has not alleged or that the
27 defendants have violated the . . . laws in ways that have not
28 been alleged."  <u>Associated Gen. Contractors of Cal., Inc. v.</u>

6

1  <u>California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

2  Moreover, the court "need not assume the truth of legal

3  conclusions cast in the form of factual allegations."  <u>United</u>

4  <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

5  Cir. 1986).

6     In ruling upon a motion to dismiss, the court may consider

7  only the complaint, any exhibits thereto, and matters which may

8  be judicially noticed pursuant to Federal Rule of Evidence 201.

9  <u>See</u> <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th

10  Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United</u>

11  <u>States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

12                          **ANALYSIS**

13     In response to defendants' motion to dismiss, plaintiff does

14  not oppose the motion with respect to the following claims: (1)

15  quasi-contract; (2) promissory estoppel; and (3) racial

16  discrimination pursuant to 42 U.S.C. § 1981.[6]  Plaintiff's

17  remaining claims are: (1) breach of contract; (2) breach of

18  implied covenant of good faith and fair dealing; (3) negligence;

19  and (4) employment discrimination pursuant to 42 U.S.C. § 2000e-

20  16.

21  **I.   Breach of Contract**

22     Defendants contend that the court must dismiss plaintiff's

23  breach of contract claim pursuant to Rule 12(b)(1) because the

24  court lacks subject matter jurisdiction.  The court's

25  jurisdiction to adjudicate contract claims against the United

26

27        [6]    Plaintiff admits that this claim was erroneously
   brought as a § 1981 claim but asserts it may be brought as a
28  "<u>Bivens</u>" claim.  Plaintiff requests leave to amend. (Pl.'s Opp'n
   to Defs.' Mot. to Dismiss at 8).

1 States is limited to claims that do not exceed $10,000.[7]   28

2 U.S.C. § 1346(a)(2) (West 2006).

3    Plaintiff alleges that defendants breached his employment

4 contract by failing and refusing to pay him for the 15

5 suggestions he made through the SSA's ESP, which resulted in

6 over, allegedly, $445 million in savings to the SSA.  (FAC at ¶¶

7 14, 18, 44-48).  Plaintiff seeks an aggregate of $318,240 for

8 "nonpayment of awards owed" to him under the SSA's ESP.  (Id. at

9 11).  Clearly, plaintiff's cumulative demand for defendants'

10 breach of contract far exceeds the court's limited jurisdiction.

11 Therefore, the court lacks jurisdiction to adjudicate plaintiff's

12 breach of contract claim.  Accordingly, defendants' motion to

13 dismiss plaintiff's breach of contract claim is GRANTED.[8]

14 **II.  Breach of Implied Covenant of Good Faith and Fair Dealing
     and Negligence**

15    The United States, its agencies, and its employees, may not

16 be sued in the absence of a waiver of sovereign immunity.

17 F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  Congress waived

18 sovereign immunity for certain tort actions when it enacted the

19 Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.

20 However, a tort claimant may not commence proceedings against the

21 United States in a federal district court without first seeking

22 an administrative resolution by filing a claim with the

24    [7]    This limit is not violated when a plaintiff "combine[s]
25 a number of claims that are individually less than $10,000 but
   cumulatively exceed that amount."  Baker v. United States, 722
26 F.2d 517, 518 (9th Cir. 1983).

27    [8]    It is the Court of Federal Claims that has
   "jurisdiction to render judgment upon any claim against the
28 United States found upon ... express or implied contract with the
   United States," without any monetary jurisdictional limit.  28
   U.S.C. 1491(a)(1) (West 2006).

1  appropriate federal agency.  28 U.S.C. § 2675(a).  The purpose of

2  the FTCA is "to encourage administrative settlement of claims

3  against the United States and thereby to prevent an unnecessary

4  burdening of the courts."  Brady v. United States, 211 F.3d 499,

5  503 (9th Cir. 2000) (citing Jerves v. United States, 966 F.2d

6  517, 520 (9th Cir. 1992)).  The exhaustion of administrative

7  remedies requirement of § 2675(a) is "jurisdictional in nature

8  and must be strictly adhered to."  Jerves, 966 F.2d at 521

9  (citations and quotations omitted).

10     Defendants argue that plaintiff's claims of negligence and

11 breach of implied covenant of good faith and fair dealing must be

12 dismissed because plaintiff failed to exhaust his administrative

13 remedies as required by the FTCA prior to filing this action.

14 Plaintiff's first amended complaint fails to allege that he filed

15 a claim with the SSA seeking redress for his tort claims as

16 required under the FTCA.  Plaintiff, however, argues in his

17 opposition that he exhausted his administrative remedies when he

18 filed a claim with the *EEOC* seeking redress for his alleged

19 employment discrimination.  (Pl.'s Opp'n to Defs.' Mot. to

20 Dismiss at 8).  Plaintiff contends that because these tort claims

21 were "part-and-parcel" of his claim for discrimination, such

22 claims were properly raised before the EEOC and he should be

23 allowed to proceed.  (Id.)

24     Plaintiff's EEOC claim sought redress for employment

25 discrimination, for which the exclusive remedy is provided under

26 Title VII.  See Brown v. Gen. Service Admin., 425 U.S. 820, 835

27 (1976).  As such, plaintiff's EEOC claim seeking redress for

28 employment discrimination could not put defendants on notice that

9

plaintiff planned to seek redress for tort actions, which lie outside the purview of Title VII and exclusively within the FTCA. Consequently, plaintiff failed to exhaust his administrative remedies as to his tort claims.  Accordingly, defendants' motion to dismiss as to these claims is GRANTED.

**III.   Employment Discrimination**

Plaintiff alleges that he suffered racial discrimination in violation of Title VII, 42 U.S.C. § 2000e-16, both directly and in the form of a hostile work environment.  (FAC at ¶ 91).  Title VII provides that "[a]ll *personnel actions* affecting employees ... shall be made free from any discrimination based on race ..." 42 U.S.C. § 2000e-16 (emphasis added).  To succeed on a claim for race discrimination under Title VII, plaintiff must demonstrate that (1) he belongs to a suspect class, (2) he suffered an adverse personnel action, and (3) there is a causal link between the adverse action and his class membership.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Trent v. Valley Electric Assn., 41 F.3d 524, 526 (9th Cir. 1994).  Therefore, as a threshold matter, plaintiff must identify a *personnel action* in order to state a claim under Title VII.

Generally, Title VII applies to those employment decisions or actions that significantly affect compensation, terms, or conditions of employment.  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998).  Plaintiff contends that the awards granted pursuant to the ESP are compensatory bonuses and therefore fall within the purview of work-related compensation.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 6). Plaintiff further contends that the denial of such ESP awards is

a personnel action that negatively affects compensation.  See
Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840,
847 (9th Cir. 2004) (recognizing that an adverse employment
action exists where an employer's action negatively affects its
employee's compensation); but see Rabinovitz v. Pena, 89 F.3d
482, 488-89 (7th Cir. 1996) (holding that a loss of a bonus is
not an adverse employment action in a case where the employee is
not automatically entitled to the bonus).

Contrary to plaintiff's arguments, decisions relating to
awards involving employee suggestions are not "personnel
actions."  Ridenour v. United States, 44 Ct. Fed. Cl. 202, 206
(1999).[9]  In Ridenour, the court distinguished between awards
related directly to an employee's job performance and awards
submitted through the SSA's ESP, the precise program at issue
here.  Id.  The court concluded that an award, with a primary
purpose to recognize the merits of an employee, was a personnel
action because it affected the employee-employer relationship.
Id.  The court found that because merit awards "originate with

_____

[9]    While defendants rely heavily on Kipnis v. Baram, 949
F. Supp. 618 (N.D. Ill. 1996), the court finds Kipnis factually
distinguishable from the case at hand.  In Kipnis, the court was
faced with an SSA employee who claimed that he was retaliated
against in violation of Title VII because, after he filed an EEOC
complaint, he was denied an increase in an award for his
suggestion previously submitted and implemented under the ESP.
Kipnis, 949 F. Supp. at 624.  The court held that because the
plaintiff was not automatically entitled to a higher bonus, under
Rabinovitz no adverse employment action occurred.  Id. at 625.
The focus of the Kipnis court's inquiry was whether the
government had retaliated against the plaintiff for filing a
sexual harassment claim by denying him an additional award.  Id.
at 621.  Unlike the plaintiff in Kipnis, here, plaintiff has not
alleged that he was denied an award under the ESP in retaliation
for filing his EEOC complaint.  Rather, the focus here is whether
plaintiff encountered discriminatory conduct related to the terms
and conditions of his employment.

11

1  management and affect the employee in his status as a worker,

2  they necessarily hold out a potential for supervisory abuse and

3  therefore are included in the list of personnel actions as to

4  which a prohibited personnel practice might occur." Id.  In

5  contrast, the primary purpose of accepting a suggestion submitted

6  through the ESP is to improve the SSA's service, which ultimately

7  affects the SSA's relationship with those it serves, not with its

8  employees.  Id.  Awards under the ESP "offer management no

9  exploitive potential because they are unrelated to the employee's

10 status – they may affect the employee's pocketbook but not the

11 employee's career." Id.  Ultimately, the Ridenour court

12 determined that, where an agency-sponsored program invites

13 suggestion and holds out a commitment to an award, the

14 plaintiff's claim, if one at all, lies in implied-in-fact

15 contract. Id. at 207 (concluding that "the program is an

16 invitation to submit offers which, if accepted by the agency,

17 entitle the offeror to recognition that may include a cash award

18 determined in accordance with published guidelines.").

19      Like Ridenour, where a dispute over the denial of an award

20 under the SSA's ESP was not a "personnel action" for purposes of

21 an action under the Civil Service Reform Act, it follows that

22 such a dispute is not a "personnel action" for purposes of an

23 action under Title VII, which requires an action that

24 significantly affects the compensation, terms, or conditions of

25 employment. See Burlington, 524 U.S. at 761-62.  Because the

26 denial of an award under the ESP is not a "personnel action,"

27 plaintiff cannot state a claim for racial discrimination under

28 Title VII.  Accordingly, defendants' motion to dismiss is

1  GRANTED.

2       As to plaintiff's alternative theory of hostile work
3  environment discrimination, plaintiff has not alleged any facts
4  to support that such an environment existed.  In order to prevail
5  on a hostile work environment claim, plaintiff must demonstrate
6  that his workplace was permeated with discriminatory intimidation
7  that was sufficiently severe or pervasive to alter the conditions
8  of his employment and create an abusive working environment.
9  Brooks v. City of San Mateo, 299 F.3d 917, 923 (9th Cir. 2000).
10 Plaintiff's first amended complaint is devoid of any facts to
11 demonstrate that he was subjected to such an environment.
12 Plaintiff's only allegation to support his hostile work
13 environment claim is a conclusory statement that "[b]ecause of
14 the discriminatory misconduct of defendants they created, or
15 permitted their employees to create, a hostile work environment
16 in which it became impossible fo plaintiff to continue to work
17 ..."  (FAC at ¶ 92).  Plaintiff's conclusory allegation is
18 insufficient to state a hostile work environment claim under
19 Title VII.  Accordingly, defendants' motion to dismiss is
20 GRANTED.[10]

21 **IV.  Plaintiff's Request for Leave to Amend**

22      In his opposition to defendants' motion to dismiss,
23 plaintiff requests leave to amend his racial discrimination claim
24 pursuant to 42 U.S.C. § 1981 to state a "Bivens" claim.  (Pl.'s
25 Opp'n to Defs.' Mot. to Dismiss at 8).  Because a pretrial

26

27      [10]   Although both parties address a disparate impact claim
28 under Title VII, plaintiff did not plead such a claim in his
   first amended complaint.  Therefore, the court does not address
   the parties' arguments on this issue.

13

1  scheduling order was entered on June 22, 2005 (the "Pretrial
2  Order"), Rule 16 governs plaintiff's request for leave to amend.
3  Fed. R. Civ. P. 16; <u>Johnson v. Mammoth Recreations, Inc.</u>, 975
4  F.2d 604, 607-08 (9th Cir. 1992).  Under Rule 16, orders entered
5  before the final pretrial conference may be modified only "upon a
6  showing of good cause."  Fed. R. Civ. P. 16(b).  The good cause
7  requirement of Rule 16 primarily considers the diligence of the
8  party seeking the amendment.  When evaluating whether a party was
9  diligent, the Ninth Circuit has determined that "the focus of the
10 inquiry is upon the moving party's reasons for modification.  If
11 that party was not diligent, the inquiry should end."  <u>Mammoth</u>
12 <u>Recreations</u>, 975 F.2d at 610.  Only after the moving party has
13 demonstrated diligence under Rule 16 does the court apply the
14 standard under Rule 15 to determine whether the amendment was
15 proper.  <u>See</u> <u>Id.</u> at 608.

16      Plaintiff proffered no explanation as to why this claim was
17 incorrectly pled other than it was "inadvertent."  (Pl.'s Opp'n
18 to Defs.' Mot. to Dismiss at 8).  Thus, plaintiff has not
19 demonstrated good cause as to why this court should grant leave
20 to amend as required by Rule 16.  Moreover, plaintiff has not
21 demonstrated diligence in correcting this error as nearly nine
22 months have passed between the filing of the Pretrial Order and
23 plaintiff's request for leave to amend in his opposition.
24 Regardless of plaintiff's ability to show good cause and
25 diligence under Rule 16, granting leave to amend would be futile
26 because plaintiff cannot state a claim under <u>Bivens</u>.

27      In <u>Bivens</u>, the Supreme Court held that government officials
28 may be held personally liable for violations of citizens'

14

1  constitutional rights committed under the color of government

2  authority.  <u>Bivens v. Six Unknown Agents of the Federal Bureau of</u>

3  <u>Narcotics</u>, 403 U.S. 388, 397 (1971).  However, it is well settled

4  that <u>Bivens</u> did not provide a waiver of sovereign immunity for

5  claims against the United States, its agencies, or its employees

6  who are sued in their official capacities.  <u>See</u> 28 U.S.C. § 2679

7  (West 2006); <u>Fed. Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471

8  (1994); <u>Kaiser v. Blue Cross of Cal.</u>, 347F.3d 1107 (9th Cir.

9  2003).  Because plaintiff cannot bring an action under <u>Bivens</u>

10 against the United States, the SSA, or defendant Barnhart in her

11 official capacity, granting plaintiff's request for leave to

12 amend would be futile.  Accordingly, plaintiff's request for

13 leave to amend his racial discrimination claim under 42 U.S.C. §

14 1981 to a <u>Bivens</u> claim is DENIED.

15 **V.   Defendant Barnhart, In Her Individual Capacity**

16      Defendant Barnhart contends that plaintiff's claims against

17 her must be dismissed pursuant to Rule 12(b)(5) for insufficiency

18 of service of process.  Plaintiff filed his complaint on February

19 7, 2005.  Thereafter, plaintiff timely served process on the

20 United States, the SSA, and defendant Barnhart, in her official

21 capacity.  (Certificate of Service, filed April 7, 2005).

22 However, to date, plaintiff has not served process upon defendant

23 Barnhart, in her individual capacity, as required by Rules 4(e),

24 4(i)(2)(B), and 4(m).

25      Rule 4(i)(2)(B) requires that "[s]ervice on an officer or

26 employee of the United States sued in an individual capacity ...

27 is effected by serving the United States in the manner prescribed

28 by Rule 4(i)(1) *and* by serving the officer or employee in the

15

manner prescribed by Rule 4(e), (f), or (g)."  Rule Fed. R. Civ.

P. 4(i)(2)(B) (West 2006) (emphasis added).  Rule 4(e) sets forth

the methods that may be utilized to serve process upon an

individual residing within a judicial district of the United

States.  Rule 4(m) establishes the time limits for service.

Specifically, Rule 4(m) provides:

> If service of the summons and complaint is not
> made upon a defendant within 120 days after the
> filing of the complaint, the court, upon motion or
> on its own initiative after notice to the
> plaintiff, shall dismiss the action without
> prejudice as to that defendant or direct that
> service be effected within a specified time;
> provided that if the plaintiff shows good cause
> for the failure, the court shall extend the time
> for service for an appropriate period.

Fed. R. Civ. P. 4(m)(West 2006).

    For the court to extend the time for service, plaintiff must

show "good cause" for his failure to serve defendant in a timely

fashion.  Plaintiff argues that his failure to apply for an

extension of time to serve process upon defendant Barnhart was

inadvertent.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2).

However, "inadvertence does not qualify as good cause for failure

to comply with Rule 4[(m)]."  Wei v. Hawaii, 763 F.2d 370, 372

(9th Cir. 1985).  Plaintiff failed to provide any other excuse as

to why he has waited over one year to properly serve process upon

defendant Barnhart.[11]  Because plaintiff failed to timely serve

---

[11]    Plaintiff asserts that he withheld service of process
out of an abundance of caution because he was waiting for
defendant Barnhart to present her points and authorities
regarding her standing as a defendant.  (Pl.'s Opp'n to Def.'s
Mot. to Dismiss at 2).  However, plaintiff fails to note that
effective service of process is a prerequisite to a court's
exercise of personal jurisdiction over a defendant.  See Omni
Capital Int'l v. Rudolph Wolff, 484 U.S. 97, 104 (1987).  Thus,
(continued...)

1  process upon defendant Barnhart, in her individual capacity, and

2  failed to demonstrate good cause for such failure, the court

3  declines to grant plaintiff an extension of time to serve

4  process.  Accordingly, defendant's motion to dismiss all claims

5  against her in her individual capacity pursuant to Rule 12(b)(5)

6  is GRANTED.[12]

7                              **CONCLUSION**

8         For the foregoing reasons, defendants' motion to dismiss

9  plaintiff's first amended complaint against them is GRANTED.  In

10 addition, defendant Barnhart's motion to dismiss plaintiff's

11 claims asserted against her in her individual capacity is

12 GRANTED.  Plaintiff's request for leave to amend is DENIED.  The

13 Clerk of the Court is directed to close this file.

14        IT IS SO ORDERED.

15 DATED: April 25, 2006.

16

17                              /s/ Frank C. Damrell Jr.
                                FRANK C. DAMRELL, JR.
18                              United States District Judge

19

20

21

22

23

24

25

26  [11](...continued)
    the question of standing is moot if a court does not have
27  personal jurisdiction over a defendant.

28       [12]    Because the court grants defendant's motion to dismiss
    pursuant to Rule 12(b)(5), the court need not address defendant's
    immunity argument.

17